SIGAL CHATTAH
United States Attorney
District of Nevada
Nevada Bar No. 8264
ROBERT KNIEF
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
 (702) 388-6214
Robert.Knief@usdoj.gov
*Attorneys for the United States*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:24-cr-0175-RFB-MDC |
| Plaintiff, | GOVERNMENT SENTENCING MEMORANDUM |
| vs. | |
| IDRISS QIBAA, | |
| Defendant. | |

Defendant Qibaa is before the Court for sentencing following pleas of guilty to all six counts of a six-count superseding information which were entered pursuant a written plea agreement.[1]  Count One charges Extortion in violation of 18 U.S.C. § 1951(a), Counts Two and Three charge Money Laundering in violation of 18 U.S.C. § 1957, Count Four charges Stalking in violation of 18 U.S.C. §§ 2261A(2)(B) and (b)(5), and Counts Five and Six charge Interstate Communications Containing Threats in violation of 21 U.S.C. § 875(c).

In the plea agreement, the parties entered a stipulation regarding the calculation of defendant's offense level.  Following several adjustments, the parties stipulated to a final

---

[1] ECF #40.

adjusted offense level of 22.[2]  Probation determined the offense level to be a 25.[3]  The three

level difference results from Probation applying a three-level adjustment for the defendant

being involved in preparation to carry out a threat of serious bodily injury pursuant to

USSG 2B3.2(b)(3)(B)(i)(II) and (ii).  As the parties through good faith negotiations did not

include that enhancement, the United States urges this Court to adopt the guideline

calculations stipulated to by the parties.

Probation determined, and there are no objections, that the defendant is a Criminal

History Category II[4] which, when using the guideline range stipulated to by the parties,

results in an advisory guideline range of 46-57 months.

The terms of the plea agreement require the United States to recommend a sentence

within the guideline range determined by the Court at the time of sentencing while

permitting the defense to seek a downward variance pursuant to 18 U.S.C. § 3553.[5]

A.  United States' Sentence Recommendation

The United States recommends that the Court sentence defendant to a period of

confinement at the high end of the guideline range.  The defendant continues his pattern of

minimizing his actions, playing to and manipulating his audience by saying whatever he

thinks is necessary to attain his goals, and seeking to avoid the consequences of his actions.

1.  Minimizing his Actions

The defendant spends a good part of his argument explaining why "actual loss and

intended loss are not good proxies for culpability or offense seriousness."[6]  He further argues

that the guidelines "are based on generalizations that necessarily fail to capture the full

---

[2] *Id.* at 9.
[3] ECF #47 at ¶71.
[4] *Id.* at ¶120.
[5] ECF #40 at 11 ¶17.
[6] ECF #48 at 12:12-13

2

range of facts that might be relevant to evaluating harm and culpability in a given case."[7] The guidelines are a starting place, and in the case of extortion, driven by the amount of loss. Guideline calculations, in and of themselves, were never intended to capture the full range of facts in a given case. Only the facts of a case can provide the full picture of a defendant's harm and culpability. When fully reviewed, the facts of this case reveal defendant's true harms and culpability and are not kind to the defendant's position that he should receive a downward variance.

Defendant compares his conduct to that of a bank robber and concludes that his sentence should be less because he inflicted force, violence, and fear electronically as opposed to face to face. Defendant seems to argue that the method of inflicting force, violence, and fear is the controlling factor at sentencing. Defendant does not, and with good reason, discuss the degree, duration, and personal nature of the force, violence, and fear his inflicted on his multiple victims.

While a bank robber may instill fear on a teller for a few minutes using only a note and take property not belonging to the teller, the defendant did so much more for so much longer in a much more personal way. The Presentence Report does an excellent job of laying out the various harms defendant inflicted on his multiple victims. In the case of Counts One - Extortion, and Count Four – Stalking, the defendant threatened his victims, and their families, with injury and death for months eventually receiving $200,000.[8] Defendant went beyond threats to do harm when he and his wife travelled from Nevada to California to the victim's home where the defendant vandalized the victim's cars.

---

[7] *Id.* at 12:14-16.
[8] ECF #47 ¶¶ 18-26.

3

Idriss Qibaa was a one-man wrecking crew.  He was not a cog in a larger conspiracy or organization.  He was not lured into his activities by a drug habit, the need to pay off gambling debts, or anything other than raw greed and an enjoyment of bullying people.

"Mr. Qibaa would tell himself he is doing it to known Instagram drug dealers, gun suppliers, and other purveyors of the criminal underworld."[9]  Such disturbing rationalization does not account for the death threats repeatedly sent to his dentist and landlord.[10]  The defendant uses death threats and intimidation as a routine way of conducting business and personal matters.  In one case, Qibaa threatened individually and by name, the lives of the children of one of his targets.  A more personal and terrifying threat into the heart of a parent is difficult to imagine.



_____

[9] *Id.* at 4:18-20.
[10] ECF # 47 ¶¶ 27-33.

The defendant resorted to this vile tactic over a billing dispute.  The redacted portions are the names of his victim's children.

2.  Saying What Needs to be Said

At least six times in his Sentencing Memorandum, the defendant places at least some of the blame for his actions on his "unmitigated bipolar . . . disorder," "untreated bipolar disorder," or just "bipolar disorder."[11]  When being sentenced, defendant finds it to his benefit to claim the existence of a mental disorder to explain his actions.  That was, however, not always his claim nor the claim of his wife.  When defendant was asking the Court to release him pending trial, he portrayed himself quite differently advising Pretrial Services "he has never been diagnosed with a mental illness or received any psychiatric treatment.  The defendant's fiancée verified the status of his mental health."[12]

When it suits his purposes, the defendant deceives his audience portraying himself as something other than what he is.  He has presented himself to this Court as having both no psychiatric issues as well as having unmitigated bipolar disorder.   The defendant says, and continues to say, whatever he wants to manipulate his particular audience to get what he wants.  Idriss Qibaa has spent most of his adult life thriving on deception and manipulation. He has zero credibility, and unless completely and independently corroborated, nothing he claims should be taken at face value.

3.  Avoiding Consequences

The defendant correctly states that "the government bears the burden of proving restitution."[13]  He is incorrect in his assertion that because he "did not agree to any

---

[11] *Id.* at 1:21, 2:17, 3:6, 7:21, 7:24, and 8:4.
[12] This statement comes from the defendant's Pretrial Services Report to which all parties have access.  Government counsel sought and received authority to disclose this information from Pretrial Services.
[13] ECF #49 at 2:3.

restitution in the plea agreement.  Restitution is inappropriate."[14]  As Probation[15] correctly

states, restitution in this case is statutorily mandated by the Mandatory Victims Restitution

Act.[16]  The defendant claims that his argument that restitution is not appropriate has

nothing to do with whether he is responsible for restitution, but whether the government is

able to meet the burden of demonstrating the amount of restitution.  Count One of the

superseding information specifically alleges defendant extorted $200,000.[17]  In the Factual

Basis section of the plea agreement Qibaa specifically admitted extorting $200,000.[18]  The

Presentence Report, in unobjected to paragraphs, states that, pursuant to charged offenses,

the victim incurred a loss of $274,500.[19]  Defendant's argument that the government cannot

meet its burden in establishing the amount of restitution is without merit.

---

[14] *Id.* at 2:5-6.
[15] Probation is expressly not bound by the terms of the plea agreement.  ECF #40 at 1:17-18.
[16] 18 U.S.C. 3663A.
[17] ECF #39.
[18] ECF #40 at 7:15-17
[19] ECF #47 at ¶37.

B.   Conclusion

A review of the facts of this case and considering the defendant's actions in light of the principles of 18 U.S.C. 3553, the Court should deny the defendant's request for a downward variance and impose a sentence at the high end of the guideline range.

Respectfully submitted,

SIGAL CHATTAH
United States Attorney

 /s/ROBERT A. KNIEF
ROBERT A. KNIEF
Assistant United States Attorney